UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JOSEPH A. FERRARA, SR., FRANK H. FINKEL,
MARC HERBST, DENISE RICHARDSON,
THOMAS F. CORBETT, THOMAS GESUALDI,
LOUIS BISIGNANO, MICHAEL O'TOOLE,
MICHAEL C. BOURGAL and DARIN JEFFERS,
as Trustees and Fiduciaries of the Local 282
Pension Trust Fund,

                  Plaintiffs,

- against -

HAPPY TIME TRUCKING, LLC a/k/a HAPPY TIME
TRUCKING, INC., T.E.V. CORP., and JOHN DOE
COMPANIES 1-99

                  Defendants.
-------------------------------------------------------------------x

Civil Action No.

## COMPLAINT

The Trustees and fiduciaries (the "Trustees") of the Local 282 Pension Trust Fund (the "Fund"), by their attorneys Cohen, Weiss and Simon LLP, for their complaint, allege as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to Sections 502(a)(3), 502(e)(1), 502(f), 502(g), and 4301(a), (b) and (c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1132(e)(1), 1132(f), 1132(g), and 1451(a), (b), and (c), and 28 U.S.C. § 1331.

2. Venue lies in this district under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§1132(e)(2) and 1451(d), as the Fund is administered in this district.

### THE PARTIES

3. Plaintiffs are the Trustees and "fiduciaries" of the Fund as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

00880633.1

4. The Fund is a multiemployer pension plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37), and an "employee pension benefit plan" within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), that is subject to the withdrawal liability provisions of ERISA. The Fund's principal place of business is at 2500 Marcus Avenue, Lake Success, New York 11042. The Fund is jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 186(c)(5). The Fund is governed by a Restated Agreement and Declaration of Trust (the "Trust Agreement").

5. Pursuant to Sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees are authorized to bring this action on behalf of the Fund, and its participants and beneficiaries.

6. Happy Time Trucking, LLC a/k/a Happy Time Trucking, Inc. ("Happy Time") is, and at all times relevant to this action has been, a New Jersey corporation, which maintains its principal place of business at 182 Calcutta Street, Newark, New Jersey 07114.

7. T.E.V. Corp. ("TEV") is, and at all times relevant to this action has been, a New Jersey corporation, which maintains its principal place of business at 182 Calcutta Street, Newark, New Jersey 07114.

8. Happy Time was a party to a series of collective bargaining agreements with the Building Material Teamsters Local 282, International Brotherhood of Teamsters ("Local 282"), pursuant to which Happy Time was required to make contributions to the Fund and Happy Time made required contributions to the Fund.

## FACTUAL BASIS FOR CLAIMS

<u>The Withdrawal Liability Due</u>

9. In or around June 30, 2012, Happy Time permanently ceased all covered operations under the CBAs and/or permanently ceased to have an obligation to contribute to the Fund, thereby completely withdrawing from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).

10. As a result of Happy Time's complete withdrawal from the Fund, Happy Time became liable to the Fund for withdrawal liability pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381.

11. By letter dated November 10, 2015, the Fund notified Happy Time that it had effectuated a withdrawal from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).

12. After determining the amount of withdrawal liability incurred by Happy Time, the Fund notified Happy Time and TEV (collectively and individually, Happy Time and TEV, are "the Companies")by letters dated January 22, 2016 (the "First Notice and Demand") that Happy Time had withdrawn from the Fund and the Companies were liable for $4,175,485.00 in withdrawal liability, set forth the schedule for 58 monthly payments, each in the amount of $82,535.93 except for the final payment which was to be in the amount of $21,633.93, and demanded payment in accordance with the schedule, as required by Sections 4202 and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382 and 1399(b)(1).

13. By letter dated March 4, 2016 (the "First Default Letter"), the Fund notified Happy Time that, *inter alia*, the Fund had not received payment as required under its payment schedule detailed in the First Notice and Demand. As explained in the First Default Letter, if Happy Time's failure to pay were not cured within sixty (60) days, it would be deemed

3

to be in default of its withdrawal liability pursuant to ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5). Once in default, the Fund would be entitled to require immediate payment of the outstanding amount of Happy Time's withdrawal liability, plus interest.

14. By letter dated March 18, 2016 and addressed to the Fund Administrator, Happy Time contested the withdrawal liability amount, requested Trustee review, and asked for various Plan documents.

15. By cover letter dated March 30, 2016, the Fund Administrator provided Happy Time with the requested documents.

16. In part as a result of review of Happy Time's March 18, 2016 letter and to correct a miscalculation, the Fund had Happy Time's withdrawal liability recalculated.

17. After re-determining the amount of withdrawal liability incurred by Happy Time, the Fund notified the Companies by letters dated July 14, 2016 (the "Second Notice and Demand") that Happy Time had withdrawn from the Fund and the Companies were liable for $2,717,684.00 in withdrawal liability, set forth the schedule for 46 monthly payments, each in the amount of $65,445.92 except for the last payment, which was to be in the amount of $14,221.29, and demanded payment in accordance with the schedule, as required by Sections 4202 and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382 and 1399(b)(1).

18. By letter dated September 12, 2016, Happy Time advised that it intended to negotiate a new collective bargaining agreement with Local 282, which it believed should result in Happy Time incurring no withdrawal liability.

19. Happy Time did not sign a collective bargaining agreement with Local 282 after counsel's September 12, 2016 letter.

20. TEV did not sign a collective bargaining agreement with Local 282 after counsel's September 12, 2016 letter.

21. By letters dated October 4, 2017 (the "Second Default Letter"), the Fund notified the Companies that, *inter alia*, the Fund had not received payment as required under its payment schedule detailed in the Second Notice and Demand. As explained in the Second Default Letter, if Happy Time's failure to pay were not cured within sixty (60) days, it would be deemed to be in default of its withdrawal liability pursuant to ERISA § 4219(c)(5), 29 U.S.C. § 1399 (c)(5). Once in default, the Fund would be entitled to require immediate payment of the outstanding amount of Happy Time's withdrawal liability, plus interest.

22. More than sixty (60) days have elapsed since the Companies received the Second Default Letter, and the Companies failed to make any withdrawal liability payments, request further review of the withdrawal liability assessment, or initiate arbitration of the withdrawal liability assessment.

The Relationship between the Companies

23. Upon information and belief, the Companies share common management.

24. Upon information and belief, prior to his August 23, 2011 passing, Thomas E. Vaughan was the principal of Happy Time.

25. Thomas E. Vaughan's sons are Christopher Vaughan and Anthony Vaughan.

26. Thomas E. Vaughan's wife was Angela Vaughan.

27. Christopher Vaughan has been a 50% owner of Happy Time since 2006.

28. At a May 12, 2012 deposition in prior litigation between the Fund and the Companies, Christopher Vaughan identified himself as the "owner" of Happy Time.

29. Anthony Vaughan has been a 50% owner of Happy Time since 2006.

5

30. Upon information and belief, as of August 24, 2011 or shortly thereafter and prior to September 20, 2012, all management decisions for Happy Time, including decisions relating to negotiations for a potential new collective bargaining agreement with Local 282 were primarily made by Christopher Vaughan, with some input from Anthony Vaughan.

31. Upon information and belief, prior to his August 23, 2011 passing, Thomas E. Vaughan was the principal of TEV.

32. Upon information and belief, as of August 24, 2011 or shortly thereafter, and prior to September 20, 2012, Christopher Vaughan became a 26% owner of TEV.

33. Upon information and belief, as of August 24, 2011 or shortly thereafter and prior to September 20, 2012, Anthony Vaughan became a 26% owner of TEV.

34. Upon information and belief, as of August 24, 2011 or shortly thereafter, and prior to September 20, 2012, Angela Vaughan became a 48% owner of TEV.

35. Upon information and belief, as of August 24, 2011 or shortly thereafter, and prior to September 20, 2012, all management decisions for TEV, including decisions relating to negotiations for a potential collective bargaining agreement with Local 282 were primarily made by Christopher Vaughan, with some input from Anthony Vaughan.

36. Carol Cordero, TEV's longtime office manager, testified in prior litigation between the Fund and the Companies that Angela Vaughan does "[n]othing" for TEV, "[s]he just gets a check."

37. Upon information and belief, at times material to this action, Christopher Vaughan has maintained total actual ownership and operational control over the Companies.

38. Upon information and belief, at times material to this action, shareholder meetings or formal shareholder voting is not conducted for any of the Companies.

39. Upon information and belief, at times material to this action, the Companies shared centralized control of labor relations.

40. Upon information and belief, at times material to this action, the Companies shared a common business purpose.

41. Happy Time was in the trucking business, and seeks to get back in to the trucking business.

42. TEV is in the trucking business.

43. Upon information and belief, at times material to this action, the Companies were in the trucking business at the same time, with the primary distinction of their work being that Happy Time was intended to perform "union" work, that is work that Happy Time elected to report to the Fund, and TEV was intended to perform "nonunion" work, that is work that the Companies elected not to report to the Fund.

44. Upon information and belief, at times material to this action, the Companies shared equipment.

45. Happy Time owned and operated dump trucks.

46. TEV owns and operates dump trucks.

47. Upon information and belief, Happy Time transferred some of its trucks to TEV.

48. .

49. Upon information and belief, at times material to this action, the Companies had common employees.

50. Upon information and belief, at times material to this action, the Companies shared common supervisors.

51. Upon information and belief, at times material to this action, the Companies employed common drivers.

52. Upon information and belief, at times material to this action, the Companies' drivers were not always sure which of the Companies they were driving for on particular days.

53. Upon information and belief, at times material to this action, Carol Cordero, an employee of TEV, performed certain bookkeeping work for Happy Time.

54. Upon information and belief, Happy Time did not pay Ms. Cordero for the bookkeeping work she performed for it.

55. Upon information and belief, TEV paid Ms. Cordero for the bookkeeping services she performed for Happy Time.

56. Upon information and belief, Happy Time did not reimburse TEV for the bookkeeping services Ms. Cordero performed for Happy Time.

57. Upon information and belief, at material times relevant to this action, the overall business and financial operations of all of the Companies are completely interrelated.

58. Upon information and belief, at material times relevant to this action, the Companies' drivers called the same telephone number if they had a need to speak to the Companies' office staff.

59. Upon information and belief, at times material to this action, the Companies' drivers fueled their trucks as the same gas station.

60. Upon information and belief, at times material to this action, when fueling, the Companies' drivers did not have to distinguish for the gas station attendant whether the truck was a Happy Time truck or whether it was a TEV truck.

61. Upon information and belief, at times material to this action, the Companies shared common facilities.

62. Upon information and belief, at times material to this action, the Companies operated out of the same two locations, in Newark, New Jersey and in Ledgewood, New Jersey.

63. Upon information and belief, at times material to this action, Happy Time parked its trucks at 123 Howard Boulevard, Ledgewood, New Jersey.

64. Upon information and belief, at times material to this action, TEV parked its trucks at 123 Howard Boulevard, Ledgewood, New Jersey.

65. Upon information and belief, at times material to this action, Happy Time's business offices were located at 182 Calcutta Street, Newark, New Jersey and 123 Howard Boulevard, Ledgewood, New Jersey.

66. Upon information and belief, at times material to this action, TEV's business offices were located at 182 Calcutta Street, Newark, New Jersey and 123 Howard Boulevard, Ledgewood, New Jersey.

67. Upon information and belief, the Companies share common customers and suppliers.

The Controlled Group

68. Section 4001(b)(1) of ERISA provides that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1).

69. Happy Time is a trade and/or business entity.

70. TEV is a trade and/or business entity.

71. In determining whether entities are considered to be under "common control," ERISA uses the definition of "controlled group" found in the Internal Revenue Code. 29 U.S.C. § 1301(b)(1).

72. The regulations issued under the Internal Revenue Code define "members of a controlled group" as "two or more corporations connected through stock ownership...." 26 C.F.R. § 1.414(b)-(1). These regulations describe three different types of controlled groups: a "parent-subsidiary group," a "brother-sister group," or a "combined group." 26 U.S.C. § 1563(a); 26 C.F.R. § 1.414(c)-2.

73. All three types of controlled groups require that the companies be connected through a "controlling interest." *See* 26 U.S.C. § 1563(a)(1) and 26 C.F.R. §1.414(c)-2(b)(1) (parent-subsidiary group); 26 U.S.C. §1563(a)(2) and 26 C.F.R. §1.414(c)-2(c)(1) (brother-sister group); 26 U.S.C. §1563(a)(2) and 26 C.F.R. §1.414(c)-2(d) (combined group).

74. Upon information and belief, by virtue of the controlling interest exercised by Christopher Vaughan in directing all aspects of the Companies' business operations and voting stock, with minimal input from Anthony Vaughan, the Companies are within a controlled group.

75. Upon information and belief, Christopher Vaughan and Anthony Vaughan have ownership interests in other trades or businesses.

76. Defendants John Doe Companies 1-99 are fictitious defendants representing any other trade or business under common control with Happy Time.

**FIRST CAUSE OF ACTION**

77. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

78. By reason of its failure to make withdrawal liability payments within 60 days of receipt of the Happy Time, and TEV and John Doe Companies 1-99, as members of its controlled group, are in default within the meaning of ERISA Section 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), and the Fund is entitled to immediate payment from the Companies and John Does Companies 1-99 of the total amount of the withdrawal liability due, $2,717,684.00, plus accrued interest at the rate of eighteen percent per annum from the due date of the first payment until payment is made, liquidated damages, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b), and the Trust Agreement.

## SECOND CAUSE OF ACTION

79. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

80. TEV is jointly and severally liable with Trucking for the withdrawal liability and attendant damages due to the Fund based on its single entity, alter ego, single employer, and/or joint employer relationship with Happy Time.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that the Court enter judgment against the Companies as follows:

1. Declaring that the Companies are under common control, and that they are a single entity that share an alter ego, single employer, and/or joint employer relationship with each other such that the Companies are jointly and severally liable for Happy Time's withdrawal liability due to the Fund;

2. Ordering the Companies to pay the Fund the sum of $2,717,684.00, the amount of withdrawal liability due, pursuant to ERISA Sections 502(g)(2)(A), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), and 1451(b);

3. Ordering the Companies to pay the Fund interest on the withdrawal liability at the rate of eighteen percent per annum pursuant to ERISA Sections 502(g)(2)(B), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(B), and 1451(b), and the Trust Agreement;

4. Ordering the Companies to pay the Fund an amount equal to the greater of (a) interest at the rate of eighteen percent (18%) per year on the withdrawal liability, or (b) an amount not to exceed twenty percent of the withdrawal liability pursuant to ERISA Sections 502(g)(2)(C) and 4301(b), 29 U.S.C. §§ 1132(g)(2)(C), and 1451(b), and the Trust Agreement;

5. Ordering the Companies to pay the Fund the reasonable attorneys' fees and costs of this action pursuant to ERISA Sections 502(g)(2)(D) and 4301(b), 29 U.S.C. §§1132(g)(2)(D) and 1451(b), and the Trust Agreement; and

6. Granting such other and further relief as the Court deems appropriate.

Dated: New York, New York
December 21, 2017

By: _____
Joseph J. Vitale
Michael S. Adler
COHEN, WEISS AND SIMON LLP
900 Third Avenue
New York, New York 10022
(212) 356-0238

Attorneys for Plaintiffs