**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JOSEPH A. FERRARA, SR., FRANK H. FINKEL,
MARC   HERBST,   DENISE   RICHARDSON,
THOMAS F. CORBETT, THOMAS GESUALDI,
LOUIS   BISIGNANO,   MICHAEL   O'TOOLE,
MICHAEL C. BOURGAL, and DARI JEFFERS *as*
*Trustees and Fiduciaries of the Local 282 Pension*
*Trust Fund*,

        Plaintiffs,

     - against -

HAPPY  TIME  TRUCKING  LLC  *also known as*
HAPPY TIME TRUCKING, INC., T.E.V. Corp. and
JOHN DOE COMPANIES 1-99,

        Defendants.
-----------------------------------------------------------------X

        **REPORT AND**
        <u>**RECOMMENDATION**</u>

     CV 17-7450 (GRB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**  <u>P<small>RELIMINARY</small> S<small>TATEMENT</small></u>

  Plaintiffs Joseph A. Ferrara, Sr., Frank H. Finkel, Mark Herbst, Denise Richardson,

Thomas F. Corbett, Thomas Gesualdi, Lois Bisignano, Michael O'Toole, Michael C. Bourgal,

and Darin Jeffers, as Trustees and Fiduciaries of the Local 282 Pension Trust Fund (the "Fund")

(collectively, the "Plaintiffs") commenced this action against Defendants Happy Time Trucking,

Inc. ("Happy Time"), T.E.V. Corp. ("TEV Corp.") (collectively, the "Defendants"),[1] and John

Doe Companies 1-99,  pursuant to the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1001 *et seq.*, to recover withdrawal liability, liquidated damages, interest, and

attorneys' fees and costs.  *See generally* Complaint ("Compl.") [DE 1].  Plaintiffs moved for

---

[1]  Defendant John Doe Companies 1-99 have been dismissed from this action.
Unless otherwise stated, when the Court refers to "Defendants," the Court is referring only to
Defendants Happy Time and TEV Corp.

summary judgment and Judge Spatt granted their motion. *See* Memorandum of Decision & Order ("January 2020 M&O") [DE 38].

In granting the summary judgment motion, Judge Spatt awarded Plaintiffs damages which consist of withdrawal liability principal, interest due on that principal, liquidated damages, and reasonable attorneys' fees and costs. *Id.* at 22-23. Judge Spatt directed Plaintiffs to file a separate application for their attorneys' fees and costs. *Id.* Plaintiffs' counsel, Michael S. Adler, filed a declaration which requests (1) $2,717,684.00 in withdrawal liability principal, (2) $1,065,481.04 in interest on that principal through February 6, 2020, plus $1,340.23 for each day thereafter through the date of payment, (3) $1,065,481.04 in liquidated damages through February 6, 2020, plus $1,340.23 for each day thereafter through judgment entry, and (4) $81,535.29 in attorneys' fees and costs. *See* Michael S. Adler Declaration ("Adler Decl.") [DE 39], ¶ 45. Defendants did not file opposition or otherwise respond to Plaintiffs' application.

Judge Spatt referred this matter to this Court for a Report and Recommendation as to the amount of damages, attorneys' fees, and costs that should be awarded to Plaintiffs. *See* January 2020 M&O at 22-23; February 7, 2020 Referral Order. For the reasons which follow, the Court respectfully recommends to Judge Brown[2] that Plaintiffs' application be GRANTED, in part, and that Plaintiffs be awarded: (1) $2,717,684.00 in withdrawal liability principal; (2) $1,065,481.04 in interest on that principal through February 6, 2020, plus $1,340.23 for each day thereafter through the date of payment; (3) $1,065,481.04 in liquidated damages through February 6, 2020, plus $1,340.23 for each day thereafter through entry of judgment; (4) $52,906.50 in attorneys' fees and; and (5) $1,266.48 in costs.

---

[2]        Subsequent to the untimely death of Judge Arthur Spatt, this case was reassigned to Judge Gary Brown.

II.    **BACKGROUND**

The Court presumes the parties' familiarity with the facts of this case.  For purposes of this Report and Recommendation, the Court will summarize the findings of fact as set forth in Judge Spatt's decision which granted Plaintiffs' summary judgment motion to the extent those facts impact this decision.

A.    **Factual Background**

Christopher and Anthony Vaughn each own 50 percent of Happy Time Trucking. January 2020 M&O at 3.  In addition, they each own 26 percent of TEV Corp. and their mother owns the remaining 48 percent.  *Id.*  The Vaughn brothers actively manage both companies which are New Jersey corporations licensed to do business at the same address in Newark. *Id.* at 2.  TEV Corp. is a trucking company which also does business in the New York City area. *Id.* at 3.  Its employees haul materials, such as contaminated soil, to and from job sites.  *Id.* Unlike Happy Time, TEV Corp. specializes in hauling salt.  *Id.*  Drivers for both Happy Time and TEV would call the same telephone number to speak to the companies' staff and they would park their trucks at the same New Jersey address.  *Id.*  Several employees worked for both businesses and would use the same truck when driving for either company.  *Id.* at 3-4.

Plaintiffs are members of the Teamsters Union (the "Union").  *Id.* at 1-2.  A board of trustees, comprised of labor and management representatives, administers the Local 282 Trust Fund pursuant to "Restated Agreements and Declarations of Trust" (the "Trust Agreements") for the purposes of collecting contributions from employers and providing benefits to eligible Fund participants.  *Id.* at 2.  There were three collective bargaining agreements ("CBAs") in effect which bound Happy Time to the Trust Agreements:  (1) the Metropolitan Trucker's Association Contract with the Union, in effect from July 1, 2006 through June 30, 2009 (the "2006 MTA

3

CBA"); (2) the New York City Heavy Construction and Excavating Contract with the Union, in effect from July 1, 2006 through June 30, 2009 (the "2006 NYC Heavy CBA"); and (3) the Metropolitan Trucker's Association Contract with the Union, in effect from July 1, 2009 through June 30, 2012 (the "2009 CBA"). *See id.* at 3, 11 (finding Happy Time was an ERISA employer and signed multiple CBAs with the Union that obligated it to contribute to the Fund).

Plaintiffs have alleged that "on or about June 30, 2012, 'Happy Time permanently ceased all operations under the CBAs and/or permanently ceased to have an obligation to contribute to the Fund, thereby completely withdrawing from the Fund.'" *Id.* at 4 (quoting Compl. ¶ 9). Defendants admitted that Happy Time ceased operations after the 2011 death of the Vaughn brothers' father. *Id.* On November 5, 2015, the Fund notified Happy Time that it had effectuated a withdrawal from the Fund. *Id.* After calculating the amount of withdrawal liability that Happy Time incurred, the Fund sent Defendants a later dated January 22, 2016 which stated that Defendants were liable for $4,175,385 (the "First Notice and Demand"). *Id.* The First Notice and Demand also provided a 58-month payment schedule and demanded payment in accordance with that schedule. *Id.* The Fund wrote to Defendants a second time in March 2016 stating that it had not received any payments. *Id.* Happy Time sent a responsive letter on March 4, 2016. *Id.* Happy Time contested the withdrawal liability amount and requested trustee review of various plan documents. *Id.* The Fund administrator provided Happy Time with these documents and reviewed its initial assessment of Defendants' withdrawal liability. *Id.* After this review was conducted, the Fund notified the parties by letter dated July 14, 2016 (the "Second Notice and Demand") that Happy Time withdrew from the Fund and was liable for $2,717,684 in withdrawal liability. *Id.* at 4-5. The Second Notice and Demand also set forth a payment schedule. *Id.* at 5.

On September 12, 2016, Happy Time advised the Fund that it intended to negotiate a new CBA with the Union which it believed should result in Happy Time incurring no withdrawal liability. *Id.* However, neither Happy Time nor TEV Corp. signed a new CBA with the Union. *Id.* In an October 2017 notice of default, the Fund notified Defendants that it did not receive payment as requested in the Second Notice and Demand. *Id.* The Fund warned Defendants that their failure to pay within 60 days would result in a default on the withdrawal liability. *Id.* Defendants did not make any withdrawal payments during that 60-day period. *See id.*

### B.     Procedural Background

Plaintiff commenced this action on December 22, 2017. *See* Compl. Plaintiffs asserted two causes of action: (1) Defendants failed to make withdrawal liability payments within 60 days and were in default pursuant to ERISA § 4219(c)(5)(A), 29 U.S.C. § 1339(c)(5)(A), and the Fund was consequently entitled to immediate payment; and (2) TEV Corp. is jointly and severally liable for Happy Time's withdrawal liability because of its "single entity, alter ego, single employer, and/or joint employer relationship with Happy Time." *Id.* ¶¶ 77-80. Plaintiffs also asked for a declaration that the two companies are under common control and are a single entity so that they are jointly and severally liable for Happy Time's withdrawal liability. *Id.* at 11, ¶ 1. With respect to damages, Plaintiffs requested: "$2,717.684 in withdrawal liability principal; interest on the withdrawal liability principal at the rate of 18 percent annually, pursuant to ERISA §§ 502(g)(2)(B) and 4301(b), 29 U.S.C. §§ 1132(g)(2)(B), and 1451(b), and the Trust Agreement; an order that the Defendant companies pay an amount equal to the greater of the 18 percent interest rate or an amount not to exceed 20 percent of the withdrawal liability pursuant to ERISA §§ 502(g)(2)(C) and 4301(b), 29 U.S.C. §§ 132(g)(2)(C), and 1451(b), and the Trust Agreement; and attorneys' fees and costs." January 2020 M&O at 5-6.

Plaintiffs moved for summary judgment on May 14, 2019. *See* DE 33. On January 31, 2020, Judge Spatt granted Plaintiffs' motion. January 2020 M&O at 23. Judge Spatt found that Happy Time and TEV Corp. are jointly and severally liable to Plaintiffs for their damages, attorneys' fees and costs. *Id.* at 12, 21-22. He then referred the matter to this Court for a Report and Recommendation as to the amount of damages, attorneys' fees, and costs owed. *Id.* at 22-23. Plaintiffs were directed to file an application for their attorneys' fees and costs addressed to this Court. *Id.*

### C.    The Instant Application

On February 7, 2020, Attorney Adler filed a declaration in support of Plaintiffs' claim for damages. *See* Adler Decl. Attorney Adler requests that Plaintiffs be awarded: (1) $2,717,684.00 in withdrawal liability principal; (2) $1,065,481.04 in interest on that principal through February 6, 2020, plus $1,340.23 for each day thereafter through the date of payment; (3) $1,065,481.04 in liquidated damages through February 6, 2020, plus $1,340.23 for each day thereafter through judgment entry; and (4) $81,535.29 in attorneys' fees and costs. *Id.* ¶ 45. Attached to Attorney Adler's declaration are: (1) copies of the monthly bills that his firm, Cohen, Weiss and Simon LLP (the "Firm"), sent to the Fund; (2) copies of decisions by multiple courts in the Eastern District which purportedly approved fees similar to those requested in this application; and (3) copies of invoices for service of process and transcripts. *See* Billing Invoices [DE 39 at 13-66]; Case Law in Support of Fee Application [DE 39 at 67-156]; Service of Process Invoices [DE 39 at 157-59]; Transcript Invoices [DE 39 at 160-61]. Defendants did not respond to nor have they opposed Plaintiffs' application.

III.    **DISCUSSION**

Judge Spatt previously determined that Plaintiffs are entitled to damages under ERISA. Therefore, this Court must determine whether the amounts Plaintiffs request are appropriate and supported by the record.

A.    **Withdrawal Liability**

Plaintiffs assert that they are entitled to $2,717,648.00 in withdrawal liability principal. *See* Adler Decl. ¶ 34.  "The law is unforgiving where, as here, an employer fails to take action in a timely manner after being notified."  *Labarbera v. Utd. Crane & Rigging Servs., Inc.*, Nos. 08-CV-3274, 08-CV-3983, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011) (citing *Amalgamated Lithographers of America v. Unz & Co. Inc.*, 670 F.Supp.2d 214, 222 (S.D.N.Y.2009)).  Any dispute concerning the plan's assessment of liability had to be settled through arbitration, and an employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated.  *Id.* (citing *Daniello v. Planned Sys. Integration Ltd.*, 2009 WL 2160536, at *5 (E.D.N.Y. July 17, 2009)).  Therefore, this Court has discretion to "adopt . . . the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated."  *Id.*; *see Daniello*, 2009 WL 2160536, at *5; *Dunhill Food Equip. Corp.*, 938 F. Supp. 2d at 367; *Natale*, 2014 WL 4537501, at *6.

In his Memorandum & Order, Judge Spatt found that "Happy Time did not seek arbitration to challenge the withdrawal liability."  January 2020 M&O at 12.  Notwithstanding the Court's inherent discretion to adopt the withdrawal liability figure proffered by Plaintiffs, in support of their motion for summary judgment the Fund submitted a detailed actuarial report setting forth the manner and means by which the total liability figure of $2,717,684.00 was

calculated.  *See* Local 282 Pension Trust Fund Revised Report on Withdrawal Liability Happy Time Trucking/TEV Corp. ("Actuarial Report") [DE 33-6 at 389-400].  Having reviewed the Actuarial Report, the Court is satisfied that the principal amount of outstanding withdrawal liability has been sufficiently established.  *See id.*  In addition, Judge Spatt stated that Plaintiffs are entitled to this exact amount of withdrawal liability in his Memorandum & Order.  *See id.* ("Defendant Happy Time is liable to the Plaintiffs in the amount of $2,717,684 in withdrawal liability principal.").  Accordingly, this Court respectfully recommends to Judge Brown that Plaintiffs be awarded $2,717,684.00 in withdrawal liability principal.

Plaintiffs also seek interest on the unpaid withdrawal liability amount totaling $1,065,481.04.  Adler Decl. ¶ 8.  The Trust Agreements and ERISA expressly provide for this category of damages.  *See id.* ¶ 5; Restated Agreement and Declaration of Trust ("First Trust Agreement") [DE 33-5, Ex. B], Art. IX § 3, amended October 28, 2003; Amended and Restated Agreement and Declaration of Trust ("Second Trust Agreement") [DE 33-5, Ex. A], Art. IX § 3; 29 U.S.C. § 1132(g)(2).  The Trust Agreements provide for interest to be calculated at the rate of 1.5% per month, or 18% per year, accruing from the date that the full amount of withdrawal liability became due.  *See* Adler Decl. ¶¶ 5-6; First Trust Agreement, Art. IX § 3, amended October 28, 2003; Second Trust Agreement, Art. IX § 3.

The date the full amount of withdrawal liability became due was December 3, 2017, which is 60 days after Plaintiffs sent Defendants a notice of default.  Plaintiffs then determined the amount of interest by utilizing the following calculation:  $2,717,684.00 (principal) x 0.18 (18% annual interest rate) x 795 (number of days between December 3, 2017 and February 6, 2020) ÷ 365 (days per year) = $1,065,481.04 accrued interest.  Adler Decl. ¶ 7.  In addition, pursuant to the terms of the Trust Agreements, daily interest shall continue to accrue for each

day until payment is made.  *See* First Trust Agreement, Art. IX § 3; Second Trust Agreement, Art. IX § 3.  Plaintiffs then calculated daily interest to accrue at the rate of $1,340.23, beginning on February 6, 2020 ($2,717,684.00 principal x .18 annual interest rate ÷ 365 days per year = $1,340.23).  Having reviewed this methodology, the supporting documentation and the governing Trust Agreements, the Court is satisfied that Plaintiffs adequately established their entitlement to the interest amounts requested in the Adler Declaration.  The Court respectfully recommends to Judge Brown that Plaintiffs be awarded $1,065,481.04 in accrued interest on the unpaid withdrawal liability, through the date of filing the instant motion, together with combined daily interest of $1,340.23 for each day thereafter until judgment is entered.

**B.    Liquidated Damages**

Pursuant to the Trust Agreements and ERISA, Plaintiffs are entitled to additional damages in conjunction with the Fund's Withdrawal Liability.  Both the Trust Agreements and ERISA provide that in the event of default, Plaintiffs are entitled to interest on the delinquent sum or liquidated damages of 20 percent, whichever is greater.  *See* Adler Decl. ¶ 10; First Trust Agreement, Art. IX § 3(d); Second Trust Agreement, Art. IX § 3(c); 28 U.S.C. § 1132(g)(2).  Here, Plaintiffs request liquidated damages in the amount of $1,065.481.04 which is the interest calculated at the rate of 18% per year on the withdrawal liability.  Adler Decl. ¶ 11.  Plaintiffs further seek to recover $1,430.23 in interest for each day thereafter through entry of judgment.

Twenty percent of the withdrawal liability principal is $543,536.80 ($2,717,684.00 x 0.20).  *See id.*  The Court has already established that the unpaid interest on the withdrawal liability is $1,065.481.04.  *See supra* Section III.A.  Thus, the amount of unpaid interest on the delinquent withdrawal liability is greater than 20% of the withdrawal liability principal.  Similar to the amount of interest for the delinquent withdrawal liability, the liquidated damages award

will continue to accrue at a daily rate of $1,430.23.  *See Gesualdi*, 97 F. Supp. 3d at 102; *Trustees of the Local 813 Pension Tr. Fund v. Canal Carting, Inc.*, No. 12-CV-0060, 2014 WL 843244, at *15 (E.D.N.Y. Mar. 4, 2014); *Gesualdi v. Magnolia Pro Trucking Inc.*, No. CV 11-4082, 2012 WL 4036119, at *8 (E.D.N.Y. Aug. 20, 2012), *report and recommendation adopted sub nom.*, 2012 WL 4035779 (E.D.N.Y. Sept. 11, 2012).  Therefore, the Court respectfully recommends to Judge Brown that Plaintiffs be awarded liquidated damages in the amount of $1,065,481.04 plus additional damages in the amount of $1,430.23 for each day beginning February 6, 2020 until judgment is entered.

### C.    Attorneys' Fees and Costs

Judge Spatt also determined that Plaintiffs are entitled to their reasonable attorneys' fees and costs.  January 2020 M&O at 22.  Plaintiffs request attorneys' fees in the amount of $80,253.00 for 197.8 hours of work and costs in the amount of $1,281.79.  Adler Decl. ¶ 13.  The Court must now consider whether these amounts are reasonable.

### 1.    *The Lodestar Analysis*

The Court has discretion to determine the amount of attorneys' fees appropriate to satisfy a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  In adjudicating a motion for attorneys' fees, both the Second Circuit and the Supreme Court have held that "the lodestar method — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)).  The Court should determine the "presumptively reasonable fee" by looking to "what a reasonable paying client would be willing to pay."  *Arbor Hill*, 522 F.3d at 183-84.

10

a.    **Reasonable Hourly Rate**

In determining reasonable hourly rates, the Court considers this Circuit's adherence to the "forum rule," which states that a district court should generally use the prevailing hourly rates in the district where it sits.  *See Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d. Cir. 2009); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983); *see also Joseph v. HDMJ Restaurant, Inc*., No. 09 Civ. 240, 2013 WL 4811225, at *19 (E.D.N.Y. Sept. 9, 2013) (internal citations omitted); *Pinzon v. Paul Lent Mechanical Sys.*, No. 11 Civ. 3384, 2012 WL 4174725, at *5 (Aug. 21, 2012), *adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). "Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour."  *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312, 2018 WL 2766139, at *7 (E.D.N.Y. June 8, 2018); *see Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL 4179943, at *3 (E.D.N.Y. Aug. 5, 2016); *Valdez v. H & S Rest. Operations, Inc.*, No. 14 CV 4701, 2016 WL 3079028, at *8 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016); *OneWest Bank, N.A. v. Denham* No. CV 14-5529, 2015 WL 5562980, at *12 (E.D.N.Y. Aug. 31, 2015), *adopted by* 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09 Civ. 5251, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014) (collecting cases).

"Some judges 'have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.'"  *Safeco Ins. Co. of Am.*, 2018 WL 2766139, at *7 (internal quotation marks omitted) (quoting *Small v. New York City Transit Auth.*, No. 09 Civ. 2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014)); *Local 807 Labor-Mgmt. Health & Pension Funds v. Showtime on the*

11

*Piers, LLC*, No. 18-CV-3642, 2019 WL 440641, at \*5 (E.D.N.Y. Jan. 14, 2019) ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners . . . ."), *report and recommendation adopted sub nom. Local 807 Labor-Mgmt. Health & Pension Funds v. Showtime on Piers, LLC*, No. 18-CV-3642, 2019 WL 438476 (E.D.N.Y. Feb. 4, 2019); *Eichenblatt v. Kugel*, No. 17 CV 559, 2018 WL 3202079, at \*10 (E.D.N.Y. May 15, 2018) ("Prevailing hourly rates for attorneys in the Eastern District of New York typically range "from $300 to $450 for partners [and] $200 to $300 for senior associates."); *see Nicaisse v. Stephens & Michaels Associates, Inc.*, No. CV 14-1570, 2016 WL 4367222, at \*4 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 14-CV-1570, 2016 WL 4275687 (E.D.N.Y. Aug. 12, 2016).

Although the Second Circuit has not recently revisited the issue of what constitutes a reasonable fee within this district since its discussion in *Konits v. Karahalis*, 409 Fed. App'x 418, 422-23 (2d Cir. 2011) (summary order), which affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour, a number of district courts within this district continue to rely, in part, on *Konits* in determining the appropriate range of fees. *See Morales v. B&M Gen. Renovation Inc.*, No. 14 CV 7290, 2016 WL 1266624, at \*11 (E.D.N.Y. Mar. 9, 2016) (relying, in part, on *Konits* and finding that "the prevailing hourly rate for partners in this district is between $300 and $400"), *report and recommendation adopted*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016); *Incredible Foods Grp., LLC*, 2016 WL 4179943, at \*3 (same); *Valdez*, 2016 WL 3079028, at \*8 (same); *Litkofsky v. P & L Acquisitions, LLC*, No. CV 15 5429, 2016 WL 7167955, at \*9 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted sub nom. Ira Litkofsky v. P & L Acquisitions LLS*, No. CV 15-5429, 2016 WL 7168069 (E.D.N.

Dec. 8, 2016) (same); *Gesualdi v. Paladin Constr. Corp.*, No. CV 14-7291, 2016 WL 943589, at

*11 (E.D.N.Y. Feb. 18, 2016), *report and recommendation adopted*, 2016 WL 953261

(E.D.N.Y. Mar. 11, 2016) (same).

   With the forum rule as a guide, courts also "take into account case-specific factors to help

determine the reasonableness of the hourly rates and the number of hours expended." *Pinzon*,

2012 WL 4174725, at *5; *United States v. City of New York*, No. 07-CV-2067, 2013 WL

5542459, at *6 (E.D.N.Y. Aug. 30, 2013) ("In addition to the prevailing market rates, the court

must also consider case-specific factors.").  These factors include:

> [T]he complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources
> required to prosecute the case effectively (taking account of the
> resources being marshaled on the other side but not endorsing
> scorched earth tactics), the timing demands of the case, whether an
> attorney might have an interest (independent of that of his client) in
> achieving the ends of the litigation or might initiate the
> representation himself, whether an attorney might have initially
> acted *pro bono* (such that a client might be aware that the attorney
> expected low or non-existent remuneration), and other returns (such
> as reputation, etc.) that an attorney might expect from the
> representation.

*Arbor Hill*, 522 F.3d at 184.  *See Div. 1181 Amalgamated Transit Union-New York Employees*

*Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017).  Additionally,

courts should consider:

> (1) [T]he time and labor required; (2) the novelty and difficulty of
> the questions; (3) the level of skill required to perform the legal
> service properly; (4) the preclusion of employment by the attorney
> due to acceptance of the case; (5) the attorney's customary hourly
> rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the
> amount involved in the case and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the

professional relationship with the client; and (12) awards in similar cases.[3]

*Gomez v. Midwood Lumber & Millwork, Inc.*, No. 17-CV-3064, 2018 WL 3019877, at *4 (E.D.N.Y. June 17, 2018) (citing *Bogosian v. All Am. Concessions,* No. 06-CV 1633, 2012 WL 1821406, at *2 (E.D.N.Y. May 18, 2012)); *Arbor Hill*, 522 F.3d at 190. "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Finkel v. Omega Comm'n Svcs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

### b.    Reasonableness of Hours Billed

To determine whether the number of hours spent by counsel on a given task was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the

---

[3]    These are the 12 factors initially set out by the Fifth Circuit in *Johnson v. Georgia Highway Express. Inc*., 488 F.2d 714 (5th Cir. 1974). While the Second Circuit in *Arbor Hill* stated that "in determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors," 522 F.3d at 190, "[t]he Supreme Court recently approved the lodestar approach over the more discretionary approach that had been adopted by the 5th Circuit in [*Johnson*]." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 506 (S.D.N.Y. 2012) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). Yet the 12 *Johnson* factors appear to remain part of a comprehensive approach to determining the rate a reasonable client would be willing to pay. *See, e.g.*, *New York City Dist. Council of Carpenters*, No. 16-CV-3429, 2018 WL 3768586, at *2 (E.D.N.Y. July 23, 2018), *report and recommendation adopted sub nom. Trustees of New York City Dist. Council of Carpenters Welfare Fund v. Best Made Floors, Inc.*, No. 16-CV-3429, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018); *Gutierrez v. Taxi Club Management, Inc.*, 17 Civ. 532, 2018 WL 3432786, at *13 (E.D.N.Y. June 25, 2018), *report and recommendation adopted sub nom. Gutierrez v. Taxi Club Mgmt., Inc.*, No. 17-CV-0532, 2018 WL 3429903 (E.D.N.Y. July 16, 2018); *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, No. 12-CV-7311, 2016 WL 5812105, at *5 (S.D.N.Y. Sept. 22, 2016); *Finkel v. Rico Elec., Inc.*, No. 11-CV-4232, 2012 WL 6569779, at *13 (E.D.N.Y. Oct. 1, 2012), *report and recommendation adopted*, No. 11-CV-4232, 2012 WL 6561270 (E.D.N.Y. Dec. 17, 2012).

practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. 03 Civ. 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).  A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation." *Cho v. Koam Medical Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley*, 461 U.S. at 434); *Barbu v. Life Ins. Co. of N. Am.*, No. 12-CV-1629, 2015 WL 778325, at *4 (E.D.N.Y. Feb. 24, 2015).

Likewise, where counsel relies on vague or excessive entries or block billing practices which make it difficult for a court to assess reasonableness, an across-the-board fee reduction is warranted.  *Anderson v. Cty. of Suffolk*, No. CV 09-1913, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (recognizing that where "counsel relies on vague entries and block billing, courts are unable to review hours for reasonableness" and noting that "[c]ourts have imposed reductions as high as 40% based solely on vague billing entries"); *see Barbu*, 2015 WL 778325, at *5 (imposing a 33% reduction in total hours based upon vague entries and block billing); *Caban v. Employee Sec. Fund of the Elec. Products Indus. Pension Plan*, No. 10–CV–389, 2015 WL 7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (imposing a 33% reduction in overall hours spent due to block billing, vague entries, and excessive time spent on certain routine tasks); *Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 112 (E.D.N.Y. 2013) (imposing a 40% reduction due to vague and unrelated entries); *see also Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y. 2010) (reducing attorneys' fees award by 40% and holding that "[i]n the instance where a court has directed parties to parse out records to clearly state how much time the attorneys spent on each claim, and the parties have done so insufficiently and have referred to an unrealistic volume of hours as 'inextricably intertwined' with many claims, the court may also decrease the requested award amount"); *DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1045

(E.D.N.Y. 1993) (reducing attorneys' fee request by 40% due to duplication of work, vague descriptions of some of the work performed and the necessity of the work).

Further, where counsel seeks compensation for time spent completing administrative tasks or work that should have been accomplished by a less-skilled practitioner, "[u]niform percentage cutbacks are warranted." *De La Paz v. Rubin & Rothman,* LLC, No. 11 Civ. 9625, 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013); *see Chavez*, 2016 WL 1171586, at *5 (reducing total hours by 30 % since "much of the work in this case could have been conducted by a less experienced associate billing at a significantly lower rate" and because "some of the work appears to be duplicative of work conducted in other similar FDCPA cases handled by the same counsel"); *Barshay v. Specified Credit Assocs. I, Inc.,* No. CV 15-1044, 2016 WL 3578993, at *3 (E.D.N.Y. June 3, 2016) (reducing total hours claimed in FDCPA action by 20% in light of the duplicative nature of the work, the fact that many of the tasks could have been accomplished by "a less experienced associate," and based upon the overall lack of care taken in preparation of materials submitted to the court), *report and recommendation adopted sub nom. Barshay v. Specified Credit Assocs. 1, Inc.,* No. 15-CV-1044, 2016 WL 3582058 (E.D.N.Y. June 28, 2016).

## 2. *Costs*

Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12 Civ. 3049, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014). However, it is incumbent upon the party seeking reimbursement of its costs to provide the court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid. *See Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at

*5 (S.D.N.Y. Sept. 10, 2013) ("[I]t is . . . the requesting party's burden to support its application, and this means that the requested costs must be substantiated . . . .  A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation."); *Volpe v. Nassau Cty.*, No. 12 CV 2416, 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016) ("The fee applicant bears the burden of adequately documenting and itemizing the costs requested.") (internal quotation omitted).  In addition, Local Civil Rule 54.1 states that "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for the costs claimed must be attached as exhibits." *Id.* (quoting *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458, 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012), *report & recommendation adopted sub nom.*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012)).

Generally, the only exception to this rule is where reimbursement is sought for a filing fee.  In such cases, a court may take judicial notice of the fact that the fee was paid by virtue of entries in the docket. *See Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014), *judgment entered sub nom.*, 2015 WL 5821499 (E.D.N.Y. Sept. 30, 2015) ("The Court takes judicial notice of the $350 filing fee reflected on the docket."); *Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("Court fees that are reflected on the Court's docket are sufficiently substantiated").

### 3.    *Application to the Facts*

#### a.    **Hourly Rates of Plaintiffs' Counsel**

Attorney Adler listed 10 individuals at his firm who spent time working on this matter and provided the following chart:

17

| Attorney/Paralegal/ Law Clerk/Clerk | Rate | No. of Hours | Total |
|---|---|---|---|
| M. Adler | 425/hr | 3.3 | $1,402.50 |
| J. Vitale | 425/hr | 0.6 | $255.00 |
| D. Hock | 425/hr | 0.2 | $85.00 |
| Z. Leeds | 425/hr | 0.1 | $170.00 |
| T. Mackson | 415/hr | 0.1 | $41.50 |
| E. Gilman | 115/hr | 0.4 | $46.00 |
| M. Adler | 450/hr | 156.8 | $70,560.00 |
| J. Vitale | 450/hr | 7.5 | $3,375.00 |
| T. Mackson | 450/hr | 0.2 | $90.00 |
| E. Medina | 415/hr | 2.7 | $1,120.50 |
| G. Kramer | 120/hr | 15.6 | $1,872.00 |
| S. Collishaw | 120/hr | 0.9 | $108.00 |
| M. Lore | 120/hr | 8.1 | $972.00 |
| M. Stolz | 120/hr | 1.3 | $156.00 |
| **TOTALS** | | **197.8** | **$80,253.50** |

Adler Decl. ¶ 18.[4]  The Court will now consider the qualifications of each individual and determine reasonable hourly rates accordingly.

### i.      Partners

Joseph J. Vitale is a 1989 graduate of Fordham University Law School and a partner at Cohen, Weiss and Simon LLP.  *Id.* ¶¶ 15, 19.  Attorney Vitale oversees the Firm's fund-related caseload.  *Id.* ¶ 19.  He has been engaged in labor and employment benefits practice since 1990 and has experience litigating cases to collect delinquent contributions.  *Id.*  He is counsel of record in over 200 ERISA cases, many of which were filed on behalf of the Fund here.  Attorney Vitale also oversees the Firm's fund-related caseload.  *Id.*  Plaintiffs seek fees for Attorney Vitale at rates of $450 and $425 per hour.  *Id.* ¶ 18.

---

[4]      The Court points out that the names of several individuals appear twice in this chart.  It is clear from the chart itself that the reason for the repetition is the change in the law firm billing rates over the course of time during which this case has been pending.

David R. Hock is a former partner of the Firm. *Id.* ¶ 15.  He was a partner from 2012 through September 2017 and prior to that, was an associate at the Firm. *Id.* ¶ 20.  He graduated from Washington College of Law American University in 1999. *Id.*  Attorney Hock has worked primarily in the areas of litigation, employee benefits, and bankruptcy. *Id.*  Prior to joining the Firm, he was in-house counsel at a national multi-employer pension fund based in Virginia. *Id.*  He has been counsel of record in over 200 cases, many of which were filed on behalf of the Fund. *Id.*  Plaintiffs seek payment for Attorney Hock at $425 per hour. *Id.* ¶ 18.

Attorney Adler is a partner at the Firm and a 2002 graduate of the George Washington University Law School.  Adler Decl. ¶ 21.  He has been practicing employee benefits and litigating cases to collect delinquent contributions since 2003. *Id.*  Attorney Adler is counsel of record in over 200 ERISA cases, many of which were filed on behalf of the Fund. *Id.*  Prior to joining the Firm in 2009, he was employed for more than five years by the Manhattan law firm of Gorlick, Kravitz and Listhaus which exclusively represents labor unions and employee benefit plans. *Id.*  Plaintiffs request fees for Attorney Adler at rates of $450 and $425 per hour. *Id.* ¶ 18.

Zachary N. Leeds is also a partner at the Firm and is a 2004 graduate of Harvard Law School.  Adler Decl. ¶ 22.  He has been engaged in labor and employee benefits practice since 2005. *Id.*  He is counsel of record in over 75 ERISA cases, many of which were filed on behalf of the Fund, and has extensive experience litigating and arbitrating cases to collect withdrawal liability. *Id.*  Plaintiffs request fees for Attorney Leeds at a $425 hourly rate. *Id.*

"'[R]easonable hourly rates in this district for ERISA matters have ranged from $300 to $450 for partners' . . . .  However, 'courts have accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range.'" *Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773, 2019 WL 1130729, at *8 (E.D.N.Y.

19

Feb. 11, 2019) (quoting *Finkel v. Captre Elec. Supply Co. Inc.*, No. 15-CV-3584, 2015 WL

5316257, at *6 (E.D.N.Y. July 31, 2015)).  Only one of the nine cases cited by Plaintiffs

regarding the reasonableness of their proffered hourly rates awarded partners $450 and $425 per

hour.  *See* Adler Decl. ¶ 17 (citing *Gesualdi v. Rockwala Inc.*, No. CV 18-5470, Default

Judgment and Order [DE 15] (E.D.N.Y. Feb. 21, 2019)).  In *Rockwala*, the court summarily

adopted the proffered rates by counsel in a two-page, unpublished default judgment and order.

Having conducted an independent review of fee application decisions in ERISA cases in this

District, the *Rockwala* award is an outlier.  Further, the Court finds it somewhat peculiar, at best,

that the Firm would be seeking fees for these partners, namely Hock and Leeds, who billed a

total of 0.2 hours and 0.1 hours respectively to this case.

Courts have recently reduced the hourly rates requested by Attorneys Adler and Vitale

from $450 to $400 and $425 to $390 in other ERISA withdrawal liability cases.  *See id.*

(awarding Attorneys Adler and Vitale $400 per hour); *Gesualdi v. Nacirema Indus. Inc.*,

No. CV 16-4159, 2017 WL 9487171, at *6 (E.D.N.Y. Aug. 31, 2017) (awarding Attorneys Adler

and Vitale $390 per hour).  For these reasons, the Court finds that the requested rates for partner

work at $450 and $425 are not reasonable in the context of existing Second Circuit caselaw.

Accordingly, the Court will adjust the partner rate of $425 to $390 and the rate of $450 to $400.

### *ii.     Tzvi N. Mackson*

Attorney Mackson is of counsel at the Firm and also performed work on this matter while

he was an associate.  Adler Decl. ¶ 15.  He graduated from the Benjamin N. Cardozo School of

law in 2007.  *Id.* ¶ 23.  He joined the Firm as an associate in 2010 and became of counsel on

January 1, 2019.  *Id.*  He represents union-affiliated employee benefit plans in compliance and

administrative matters and litigates collection actions, benefit claim cases, and withdrawal

liability suits. *Id.* Plaintiffs request fees for Attorney Mackson at $450 and $415 per hour and the Court finds a reduction of these rates to be warranted. *Id.* ¶ 18. The Court has already determined that the requested rate of $450 is unreasonable for partners and likewise finds that this rate is unreasonable for Attorney Mackson, who performed work at this rate as of counsel. *See* Adler Decl., Ex. A (Invoice No. 54100). Attorney Mackson's $415 hourly rate, which was utilized while he was an associate, *see id.* (Invoice No. 51468), is also not consistent with prevailing rates for senior associates which typically range from $200 to $300.[5] *See Finkel v. Athena Light & Power LLC*, No. 14-CV-3585, 2016 WL 4742279, at *11 (E.D.N.Y. Sept. 11, 2016) (citing *Gesualdi v. Tapia Trucking LLC*, No. 11-CV-4174, 2012 WL 7658194, at *4 (E.D.N.Y. Oct. 15, 2012), *report and recommendation adopted*, 2013 WL 831134 (E.D.N.Y. Mar. 6, 2013)). In a 2016 decision, another court sitting in this District reduced Attorney Mackson's hourly rate to $280. *Id.* ("Taking into account that Mackson has acquired additional ERISA litigation experience since 2012, the Court reduces his [$330.00 and $315.00] hourly rate to $280.00 as consistent with prevailing associate rates for comparable levels of experience." (citing *Gesualdi v. MBM Indus., Inc.*, No. CV-10-2607, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010))). Attorney Mackson has accumulated some additional experience since *Finkel* was decided in 2016 and in view of his promotion to of counsel, the Court will adjust his requested rates to $300 per hour. *See MBM Indus.*, 2010 WL 3724348, at *2 (awarding associate with nine years of experience $280 per hour).

---

[5]    The Court further finds that the amount of time spent delineating Attorney Mackson's credentials is quite disproportionate to the total of .3 of an hour he worked on this case -- all of which appears duplicative of work done by other attorneys.

### iii.    Erika M. Medina

Attorney Medina graduated from Rutgers University Law School but Attorney Adler did not indicate her year of graduation. Adler Decl. ¶ 24. She worked at the Firm in 2018 and 2019 and is currently ERISA counsel for USI Northeast. *Id.* Prior to joining the Firm in 2018, she was a Senior Employee Benefits Investigator for six years at the U.S. Department of Labor ("DOL"), Employee Benefits Security Administration. *Id.* During her tenure at the DOL, she was in charge of conducting complex civil and criminal investigations of employee benefit plans and service providers to employee benefit plans. *Id.* Plaintiffs seek fees for Attorney Medina in the amount of $415 per hour which the Court finds is not a reasonable rate in these circumstances. *Id.*¶ 18. The Court finds that a reduction of Attorney Medina's hourly rate to $280 is appropriate and warranted. *See Finkel*, 2016 WL 4742279, at *11.

### iv.    Paralegals and Clerks

George Kramer is a paralegal. Adler Decl. ¶ 15. He has been employed by the Firm since 2002 and assists attorneys and clients in discovery, preparing documents, court filings, complex spreadsheets and presentations. *Id.* ¶ 25. A $120 hourly rate for Mr. Kramer was requested by Plaintiffs' counsel in *Gesualdi v. D.Gangi Contracting Corp.* and reduced to $95. *See D.Gangi*, 2019 WL 1130729, at *8. As the *D.Gangi* court stated, "[b]ecause the Fund did not submit any educational background on George Kramer, the Court has no basis to find an hourly rate greater than $95 reasonable." *Id.* Similar to the instant case, the Court finds a reduction of Mr. Kramer's rate to $95 appropriate due to the absence of additional information regarding Mr. Kramer's credentials. *See id.*

Scott Collishaw and Erica Gilman are former paralegals at the Firm. Adler Decl. ¶ 15. Collishaw was employed by the Firm "for several years" and Gilman was employed from 2015

to 2017. *Id.* ¶¶ 25, 27. They assisted attorneys and clients in discovery, preparing documents, court filings, and spreadsheets. *Id.* Matthew Stolz is a former law clerk who worked on this matter as a law student. *Id.* ¶¶ 15, 28. He focused on legal research and cite-checking. *Id.* ¶ 28. Lastly, Matthew Lore is a former "clerk." *Id.* ¶ 15. He was employed by the Firm in 2018 and has extensive experience reviewing and analyzing documents for various law firms. *Id.* ¶ 29. Plaintiffs request hourly rates of $120 for Collishaw, Stolz and Lore, and request a $115 rate for Gilman. In light of the fact that Plaintiffs did not set forth any educational information nor special expertise of these individuals, and their experience at the Firm is much less extensive than that of Mr. Kramer, the Court finds the rate of $80 to be reasonable and appropriate. *See D.Gangi*, 2019 WL 1130729, at *8 (prevailing rate for legal assistants in ERISA matters is $70-$80); *Nacirema*, 2017 WL 9487171, at *6 (prevailing rate for paralegals is $70-$90).

### b.   Number of Hours Billed

Plaintiffs seek reimbursement for a combined 197.8 hours of work by their attorneys and support staff. Adler Decl. ¶ 18. This amount of time exceeds the hours typically approved in comparable ERISA cases resolved on summary judgment in this District. *See Trs. of Local 813 Pension Trust Fund v. Frank Miceli Jr. Contracting, Inc.*, No. 13-CV-198, 2017 WL 9481017, at *4-5 (E.D.N.Y. Feb. 21, 2017) (finding 216.50 hours unreasonable in ERISA case that proceeded to summary judgment and reducing hours by 30%), *report and recommendation adopted*, 2017 WL 972104 (E.D.N.Y. Mar. 13, 2017); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill, Imp. & Safety Funds v. WJL Equities Corp.*, No. 13-CV-0853, 2015 WL 6965146, at *4 (E.D.N.Y. Nov. 10, 2015) (finding 112.3 hours reasonable for a case that went through two complaints, discovery, settlement negotiations, and a successful summary judgment motion); *Finkel v. Fred Todino & Sons, Inc.*, 2010 WL 4646493, at *6

(E.D.N.Y. Oct. 8, 2010) *report and recommendation adopted by*, 2010 WL 4673961 (E.D.N.Y. Nov. 3, 2010) (finding 6.9 hours of partner time, 59.1 hours of associate time, and 13.4 hours of paralegal time reasonable for an ERISA case that proceeded to summary judgment). Although some courts have found amounts of time greater than that expended by Plaintiffs' counsel to be reasonable, those cases involved inquests. *See LaBarbera v. Ovan Constr., Inc.*, 2011 WL 5822629, at *5 (E.D.N.Y. Sept. 20, 2011) *report and recommendation adopted*, 2011 WL 5825785 (E.D.N.Y. Nov. 16, 2011). Notably, the last billing entry by Plaintiffs' counsel in this case is from October 17, 2019 and appears related to summary judgment briefing which pre-dates the fee application presently before the Court by several months. *See* Adler Decl. Ex. A (Invoice No. 55561).

In addition to the overall number of hours being excessive under the circumstances, having conducted a thorough review of the time records, the Court finds that the hours billed by Attorney Adler in particular are not reasonable. "It is common, particularly with respect to discovery and other pretrial tasks, that associates shoulder much of the work, under the active supervision of partners, and that partners take lead roles as to projects for which their expertise adds value. The ratio of associate to partner hours on pretrial work typically reflects more associate than partner hours—often significantly more." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 51 (S.D.N.Y. 2015). Notwithstanding this general principle, of the 197.8 hours claimed, Attorney Adler billed 160.1 of those hours while Attorneys Mackson and Medina, the most junior attorneys on this case, billed a combined 3.0 hours. *See* Adler Decl. ¶ 18. In terms of percentages, Attorney Adler billed for 80.94% of the work whereas Attorneys Mackson and Medina billed for a combined 1.52%. Thus, strictly on a percentage basis, "these figures establish a bill that is 'lopsidedly partner-heavy,' without an otherwise sufficient basis for this

24

somewhat unequal division of labor." *Kizer v. Abercrombie & Fitch Co.*, No. CV 12-5387, 2017 WL 9512408, at *11 (E.D.N.Y. July 24, 2017) (citing *Beastie Boys*, 112 F. Supp. 3d at 51), *report and recommendation adopted*, 2017 WL 3411952 (E.D.N.Y. Aug. 9, 2017).

Indeed, a review of the billing invoices shows that a number of tasks performed by Attorney Adler could have been performed by less experienced counsel. *See, e.g.*, Adler Decl. Ex. A (Invoice No. 51430:  "Review Court notice of case assignment."), (Invoice No. 51468:  "Review defense counsel's motion for an extension of time to answer complaint. . . .  Review notice of appearance of defense counsel. . . .  Review Court scheduling order."), (Invoice No. 51893:  "Review discovery order. . . .  Perform online research re defendants' account. . . .  Review defense counsel's letter motion to reschedule Court Initial Conference. . . .  Review Court initial conference scheduling order. . . .  Review defense counsel's [second] letter motion to reschedule conference. . . .  Review Court scheduling order. . . ."),  (Invoice No. 52022:  "Review Court scheduling order."); (Invoice No. 52272:  Several billing entries for reviewing document and interrogatory requests and drafting responses thereto.), (Invoice No. 52496:  "Review deposition transcripts from prior lawsuit for discovery purposes," drafting responses to discovery requests, and three entries for "[d]raft and outline deposition questions and review relevant documents re same."), (Invoice No. 52810:  "Review Court conference scheduling order. . . .  Draft Court status report."), (Invoice No. 53049:  "Draft Court discovery status report. . . .  Review defense counsel's notice of appearance."), (Invoice No. 53758:  "Draft letter to Court re conference in anticipation of filing for summary judgment. . . .  Review defense counsel's letter to Court re motion for summary judgment."), (Invoice No. 53916:  "Review Court scheduling order."), (Invoice No. 54100:  Review defense counsel's letter motion to reschedule Court hearing. . . .  Review Court scheduling order re

25

summary judgment motion request. . . . Review Court hearing minute entry. . . .  Review Court pre-trial conference scheduling order."), (Invoice No. "******", dated May 10, 2019:  "Review Companies' letter motion to Court re extension of time to file joint pre-trial order. . . .  Review Court scheduling order re joint pre-trial order.", (Invoice No. 54543:  "Draft notice of motion for summary judgment. . . .  Draft proposed summary judgment order.  Draft letter to Court re motion for summary judgment."), (Invoice No. 54710:  Seven entries for "Draft reply memorandum of law in support of motion for summary judgment.").

The Court also observes that Plaintiffs' billing records contain numerous entries that are duplicative and excessive.  *See Simmons v. New York City Dep't of Corr.*, No. 06 Civ. 5298, 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) ("[T]he district court must account for duplicative or repetitive work to ensure that the . . . fees represent only work that was necessary to the litigation and a cost efficient use of co-counsel and outside counsel." (internal quotation marks and citation omitted)); *see also Empire State Carpenters Welfare v. Hanna Contracting, Inc.*, No. CV 10-0243, 2011 WL 845083, at *2 (E.D.N.Y. Feb. 8, 2011) ("Having reviewed the billing records, the undersigned finds that some of the legal work hours claimed by the two Firms in this matter is excessive and duplicative, particularly with respect to local counsel, given the amount of work performed and the fact that the case involves a relatively straightforward ERISA claim."), *report and recommendation adopted*, 2011 WL 846184 (E.D.N.Y. Mar. 7, 2011).  There are duplicative billing entries for "office conferences" among Plaintiffs' counsel. (*see e.g.*, Invoice Nos. 48583, 48840, 49098, 50817, 51468, 53304, 53453, 53620, 53916, 54100, and "******" dated May 10, 2019).  Attorney Adler also seems to have billed for the exercise of sending every email that went out in relation to this case which the Court finds to be excessive under the circumstances.  *See Houston v. Cotter*, 234 F. Supp. 3d 392, 404 (E.D.N.Y. 2017)

("For example, . . . the Second Circuit upheld a district court's 50 percent across-the-board reduction of hours in light of 'concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews." (quoting *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014)); *Ryan v. Allied Interstate Inc.*, 882 F. Supp. 2d 628, 637 (E.D.N.Y. 2012) ("The Court also reduces Kimmel's hours for excessive internal emails, especially those lacking detail (such as email Ginsburg re complaint) and work that should have been done by lower-billing lawyers. . . .").

In addition, the Court notes that there at least 20 entries by Attorney Adler for drafting "Serengeti case status report to Fund Office." *See* Adler Decl. Ex. A. (Invoice Nos. 50665, 50817, 51083, 51430, 51468, 51893, 52022, 52272, 52496, 52648, 52810, 53049, 53304, 53453, 53620, 53758, 53916, 54100). It is unclear why these "Serengeti case" entries are included in the invoices since "Serengeti" is not a party to this action and is not otherwise mentioned in the Complaint, summary judgment motion papers, or the fee application before the Court. *See Gesualdi v. Andrews Trucking Corp.*, No. 09 CV 565, 2010 WL 2301028, at *7 & n.1 (E.D.N.Y. Mar. 22, 2010) (finding number of hours excessive in ERISA default judgment case where, among other things, "plaintiff's counsel appears to have billed for time spent on issues unrelated to this default judgment"); *Entral Grp. Int'l, LLC v. 7 Day Cafe & Bar Inc.*, No. 05 CV 1911, 2006 WL 8439052, at *22 (E.D.N.Y. Sept. 29, 2006) ("Accordingly, because of the billing for work on unrelated cases, and because of billing for administrative tasks, this Court deems Mr. Clark's hours to be unreasonable because they are 'excessive, redundant, and otherwise unnecessary.'" (quoting *Hensley*, 461 U.S. at 434)), *report and recommendation adopted in part and rejected on other grounds*, 2006 WL 8439053 (E.D.N.Y. Nov. 17, 2006)).

After taking these factors into consideration, the Court finds that the overall number of hours billed by Plaintiffs' counsel is unreasonable and, in its discretion, recommends a 25% across-the-board reduction. *See Trs. of Local 813 Pension Fund*, 2017 WL 9481017, at *4-5. Accordingly, as summarized in the following chart, the Court respectfully recommends a fee award in the total amount of **$52,906.50**.

| Attorney/ Paralegal | Hourly Rate | | Hours Claimed | Amount | Fee Adjusted By 25% |
|---|---|---|---|---|---|
| | Claimed | Adjusted | | | |
| Adler | $425 | $390 | 3.3 | $1,287.00 | $965.25 |
| Vitale | $425 | $390 | 0.6 | 234.00 | $175.50 |
| Hock | $425 | $390 | 0.2 | 78.00 | $58.50 |
| Leeds | $425 | $390 | 0.1 | 39.00 | $ 29.25 |
| Mackson | $415 | $300 | 0.1 | 30.00 | $22.50 |
| Gilman | $115 | $80 | 0.4 | 32.00 | $24.00 |
| Adler | $450 | $400 | 156.8 | 62,720.00 | $47,040.00 |
| Vitale | $450 | $400 | 7.5 | 3,000.00 | $2,250.00 |
| Mackson | $450 | $300 | 0.2 | 60.00 | $45.00 |
| Medina | $415 | $280 | 2.7 | 756.00 | $567.00 |
| Kramer | $120 | $95 | 15.6 | 1,482.00 | $1,111.50 |
| Collishaw | $120 | $80 | 0.9 | 72.00 | $54.00 |
| Lore | $120 | $80 | 8.1 | 648.00 | $486.00 |
| Stolz | $120 | $80 | 1.3 | 104.00 | $78.00 |
| **TOTAL** | | | 197.8 | 70,542.00 | **$52,906.50** |

c.    **Costs**

In addition to a fee award, Plaintiffs seek to recover $1,281.79 in costs.  Plaintiffs

provided the following chart which lists seven categories of expenses:

| DISBURSEMENTS | |
|---|---|
| Postage | $5.73 |
| Filing Fee | $400.00 |
| Service Fee | $130.00 |
| Copies | $3.30 |
| Overnight Mail | $31.52 |
| Transcripts | $593.35 |
| Ground Transportation | $117.89 |
| **TOTAL** | **$1,281.79** |

*See* Adler Decl. ¶ 32.

As an initial matter, these types of expenses are routinely recoverable.  *See Bobrow*

*Palumbo Sales, Inc. v. Broan-Nutone* LLC, 549 F. Supp. 2d 274, 285-86 (E.D.N.Y. 2008).

Counsel has submitted copies of the invoices he received for service of process fees and

deposition transcripts.  *See id.*, Ex. C (Service of Process Invoices), Ex. D (Deposition Transcript

Invoices).  Consequently, the Court finds those expenses recoverable in the amounts requested

by counsel.  The Court takes judicial notice of Plaintiffs' payment of the $400 filing fee as

reflected on the docket and likewise finds that cost to be substantiated.  As to the remainder of

the requested costs, Plaintiffs did not provide individualized receipts for those expenses and

these amounts are embedded as line-items within the 53 pages of counsel's billing invoices.

Regarding postage, Invoice No. 52272 reflects a $1.63 charge and Invoice No. 53049

reflects a $4.10 charge.  These amounts equate to the $5.73 requested in the Adler Declaration

and are recoverable.  Plaintiffs' copying and overnight mailing costs are likewise substantiated in

the billing records and recoverable.  *See id.*, Ex. A (Copying costs:  Invoice Nos. 51893, 53453,

Overnight mail:  Invoice No 53453).  The $117.89 charge for ground transportation pertains to

29

mileage and tolls stemming from counsel's driving to and from the Court and to the Fund's office in New Jersey. *Id.* ¶ 42. Plaintiffs provide no detail as to the number of trips for which they seek reimbursement. *See id.* The billing records offer minimal clarity as they only contain entries that state "Ground Transportation" followed by the individual who traveled on a particular date. *See id.*, Ex. A (Invoice Nos. 53453, 53620, "******", dated May 10, 2019). These charges are for ground transportation on October 16, 2018, November 28, 2018, March 26, 2019, and April 29, 2019. *Id.* With the exception of October 16, 2018, the Court notes that in-person conferences were held on the other three dates which required counsel to travel from the Firm's office in Manhattan to Central Islip. *See* DE 24; 28; 32. As such, the ground $15.31 transportation cost for October 16, 2018 is deducted because the Court is unable to verify if this cost was necessary. *See* Adler Decl. Ex. A (Invoice No. 53453). Accordingly, the Court recommends that Plaintiffs be awarded $1,266.48 in costs ($1,281.79 - $15.31).

## IV.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Brown that Plaintiffs' motion for attorneys' fees be GRANTED, in part, and that Defendants Happy Time and TEV Corp. are jointly and severally liable to Plaintiffs for the following amounts:

- $2,717,684.00 in withdrawal liability principal;

- $1,065,481.04 in interest on that principal through February 6, 2020, plus $1,340.23 for each day thereafter through the date of payment;

- $1,065,481.04 in liquidated damages through February 6, 2020, plus $1,340.23 for each day thereafter through the entry of judgment;

- $52,906.50 in attorneys' fees; and

- $1,266.48 in costs.

## V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Gary R. Brown.  Any requests for an extension of time for filing objections must be directed to Judge Brown prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
     October 28, 2020
                                /s/ A. Kathleen Tomlinson
                                A. KATHLEEN TOMLINSON
                                U.S. Magistrate Judge